FILED
United States Court of Appeals
Tenth Circuit

April 14, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAEL A. FARLEY,

　　Plaintiff - Appellant,

v.

ANTHONY R. STACY,

　　Defendant - Appellee,

and

PAUL A. ROSS,

　　Defendant.

No. 15-5056
(D.C. No. 4:14-CV-00008-JHP-PJC)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **McKAY**, and **BACHARACH**, Circuit Judges.
_____

　　Michael Farley filed this lawsuit after he invested in his friends' business and

suffered significant monetary losses. The operators of that business, Paul Ross and

Anthony Stacy, successfully moved for summary judgment on Farley's claims for

violations of federal and state securities laws, breach of contract, breach of fiduciary

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

duty, and actual and constructive fraud. Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     FACTS

Michael Farley is a successful car salesman who invested over $1.25 million with the Palo Verde Fund, LP ("the Fund"), which was operated by his friends, Paul Ross and Anthony Stacy. Ross and Stacy co-founded the Fund's general partner, Paragon Capital Advisors, LLC. In addition, Ross served as the vice president of the Fund's alternative investments and Stacy as the Fund's investment manager.

In 2010, Farley invested $751,215.74 in the Fund. Farley contends that he made this investment because Ross promised him a 14% rate of return and told him his investment would remain liquid. Before the investment, however, Farley received a Subscription Booklet and a Confidential Private Placement Memorandum, which contradicted Ross's alleged promises. These investment materials disavowed any representations that were not contained within them, explained the investment terms in detail, identified numerous risk factors, warned of the risk of substantial or total losses, and highlighted the investment's lack of liquidity.[1] Farley concedes that he initialed terms throughout the Subscription Booklet and signed a Subscription Agreement to accept its terms on March 1, 2010. Even so, he contends he never read the investment materials and instead relied on his friends' advice and knowledge.

---

[1] Farley could have kept his investment liquid by checking the box on the first page of the Subscription Agreement to opt out of the Fund's alternative investment program, but he did not do so.

2

The rate of return for the first year of the initial investment was close to the 14% that was purportedly promised. So in 2011, Farley invested another $504,000. He signed two Additional Subscription Requests on March 24, 2011, which reaffirmed all of the representations, warranties, and acknowledgments made in the original Subscription Agreement.

Farley lost his entire investment after the Fund closed in 2013. In an attempt to recoup his losses, he filed this lawsuit against Ross and Stacy, alleging violations of federal and state securities laws, breach of contract, breach of fiduciary duty, and actual and constructive fraud. Ross and Stacy moved for summary judgment on all claims. The district court granted summary judgment after finding that (1) Farley could not prove his federal securities fraud, contract, and actual fraud claims; and (2) Farley's state securities fraud, constructive fraud, and breach of fiduciary duty claims were barred by the statute of limitations for each.

Farley now appeals. After the parties completed briefing, Ross was voluntarily dismissed from this appeal, leaving Stacy as the sole appellee.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo, applying the same standard that the district court applied. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Stated otherwise, "[t]he moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier

3

of fact to find for the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071 (10th Cir. 1998) (alteration and internal quotation marks omitted). "When applying this standard, we examine the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Id.*

## A. Lack of Evidence to Support Claims Against Stacy

Farley's claim for breach of fiduciary duty requires him to present evidence establishing that he and Stacy shared a fiduciary relationship. For all remaining claims, Farley must prove that Stacy made a misrepresentation in connection with the failed investment. Because the record is devoid of such evidence, we affirm the district court's grant of summary judgment in favor of Stacy on all claims.[2] *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) (confirming that we "may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal").

A moving party who will not bear the burden of persuasion at trial can meet its burden at the summary judgment stage "by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). We thus examine whether there is any evidence of a misrepresentation by Stacy or of a fiduciary

---

[2] The district court took a different path to reach this outcome, but Ross's intervening dismissal has changed the landscape of this case. In particular, Ross's dismissal has exposed the glaring absence of evidence regarding Stacy. Without such evidence, Farley cannot satisfy the initial elements of his fraud-based claims against Stacy, so justifiable reliance is no longer the central issue.

4

relationship with Stacy, based on the requirements for each claim and/or Farley's

theory of the case:

- For his federal securities law and actual fraud claims, Farley must prove that Stacy made a misleading statement or misrepresentation in connection with the failed investment. *See, e.g.*, *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997) ("a misleading statement or omission of a material fact" is an element of a claim under section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder); *Bowman v. Presley*, 212 P.3d 1210, 1218 (Okla. 2009) ("a false material misrepresentation" is an element of actual fraud).

- For his breach of contract claim, Farley must prove that Stacy orally agreed to pay him a 14% return on his investment and that the investment would remain liquid, because he argues that "he entered into an oral contract with Appellees and was led to believe that the investment documents reflected the agreed-upon terms that he would earn [14%] interest per annum, and could liquidate at any time." Pl.-Aplt.'s Opening Br. at 38.

- For his state securities fraud and constructive fraud claims, Farley must prove that Stacy prevented him from reading the investment documents or encouraged him not to read them. Farley argues that the district court erroneously applied *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1518 (10th Cir. 1983), to impute knowledge of the investment documents to him as of the two investment dates because he was prevented from reading them or encouraged not to do so. He also argues that Stacy's misleading statements tolled the statute of limitations for these claims until Farley actually discovered the fraud.

- For his breach of fiduciary duty claim, Farley must prove the existence of a fiduciary relationship, which, under Oklahoma law, "springs from an attitude of trust and confidence and is based on some form of agreement, either express or implied, from which it can be said the minds have been met to create a mutual obligation." *Quinlan v. Koch Oil Co.*, 25 F.3d 936, 942 (10th Cir. 1994) (emphasis and internal quotation marks omitted). This claim therefore requires evidence about the nature and extent of the Farley-Stacy relationship, as well as proof of an express or implied agreement with Stacy.

Even as the non-moving party, Farley must "do[] more than simply show[]

there is some metaphysical doubt as to the material facts." *Neustrom v. Union Pac.*

5

*R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(1) (a party asserting that a fact is genuinely disputed must cite to particular parts of the record, such as depositions, documents, affidavits, or discovery responses); W.D. Okla. LCvR56.1(d) (same). He has not done so.

Farley's summary judgment and appellate briefs virtually ignore Stacy. Farley does not point to—and our careful review of the record did not uncover—evidence of a single misrepresentation by Stacy. The limited evidence that Farley has presented relates only to Ross, such as excerpts from Ross's deposition transcript and Farley's own sworn affidavit discussing his friendship with Ross and statements that Ross supposedly made before the investment.[3] But Ross is no longer a party to this appeal, and Farley has neither argued nor established that Stacy is somehow liable for Ross's statements. Furthermore, Farley has not presented any evidence as to the nature or extent of his relationship with Stacy, let alone established a close personal or fiduciary one.

---

[3] *See, e.g.,* Aplt. App., Vol. III at 409 ("[Ross] promised me that I would receive a [14%] return on my investment."); *id.* at 410 ("Ross also claimed to have put [$2 million] into the Fund himself . . . ."); *id.* ("Based on Ross's promises, I agreed to invest $390,000 . . . ."); *see also* Pl.-Aplt.'s Opening Br. at 10 (characterizing his "actual contract claim" as "relat[ing] to the oral representations made by Ross"); *id.* at 20-21 (listing as material facts "Ross's admission that the parties were close friends," "Ross's admission that he had never known Appellant to read lengthy documents such as the Private Placement Memorandum," "Ross's admission that he knew that Appellant preferred to orally discuss investments rather than himself be responsible for reading through documents relating to them," "Ross's admission that the contents of the Private Placement Memorandum may not be accurate," Ross's knowledge "that Appellant was not a proficient reader," and Ross's failure to explain the meaning of "alternative investments" or Farley's ability to opt out).

The only references to Stacy occur within the allegations in Farley's unverified First Amended Complaint, which generally implicate Stacy by lumping him and Ross together. Although Farley cites those allegations, this pleading cannot constitute summary judgment evidence as to Stacy's role in the failed investment. Rather, Farley "must come forward with facts supported by competent evidence." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010); *accord Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings."); *Conaway v. Smith*, 853 F.2d 789, 792 n.4 (10th Cir. 1988) ("[A] nonmoving party may not rely merely on the unsupported or conclusory allegations contained in pleadings to rebut the movant's factual proof in support of the motion for summary judgment."). Because Farley has not presented any record evidence about Stacy so as to raise a genuine issue of material fact for his claims, we affirm the district court's grant of summary judgment.

## B. Other Issues on Appeal

Farley argues that the district court erred in accepting and granting Stacy's motion for summary judgment because it was filed five days after the dispositive motions deadline, per Stacy's pattern of persistently disregarding court rules and deadlines. While we have "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks omitted), we agree with the district court that Farley has not shown any prejudice from this brief

7

filing delay. Stacy did not raise any new issues; he adopted Ross's arguments verbatim and Farley had ample opportunity to respond to them. The district court thus appropriately construed the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1.

Farley also argues that the case should be reassigned to a different judge upon remand to assure a fair and impartial tribunal. This argument is moot in light of our decision to affirm.

### III.    CONCLUSION

For these reasons, we affirm the district court's grant of summary judgment.

Entered for the Court


Monroe G. McKay
Circuit Judge